**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
------------------------------------------------------------------------x
ABDULLAH KHALIQ, et al.,                    :
                                            :
          Plaintiff,                        :
                                            :        Civ. No. 03-775 (DRD)
                 v.                          :
                                            :
DEVON BROWN, et al.,                        :          OPINION
                                            :
          Defendant.                        :
                                            :
------------------------------------------------------------------------x
```

Abdullah Khaliq
#70743
New Jersey State Prison
Lock Bag R
Rahway, NJ 07065

      *Pro Se* Plaintiff

Gregory Perry
#204667
Toler Place
20 Toler Place
Newark, NJ 07114

      *Pro Se* Plaintiff

Walter Griggs
East Jersey State Prison
#282536
Lock Bag R
Rahway, New Jersey 07065

1

*Pro Se* Plaintiff

Todd Fletcher
East Jersey State Prison
#292033 SBI # 000185425C
ACSU-B Wing 3rd FLR-Cell 307
Lock Bag R
Rahway, New Jersey 07065

*Pro Se* Plaintiff

Peter C. Harvey
ATTORNEY GENERAL OF NEW JERSEY
By Tamara L. Rudow
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112

Attorneys for Defendants McGreevey, Brown, Balicki, Moore, Wise, Power, Pascucci, Morris and Fellman


**DEBEVOISE, Senior District Judge**

Plaintiffs, Abdullah Khaliq, Walter Griggs and Gregory Perry[1] brought this action

pursuant to 42 U.S.C. §1983 for alleged violations of their constitutional rights while they were

housed in the Administrative Close Segregation Unit ("ACSU") at East Jersey State Prison

("EJSP") in Rahway, New Jersey.  The complaint names as defendants former Governor James

McGreevey, Commissioner Devon Brown, former Assistant Commissioner Robert Balicki,

former EJSP Administrator Terrence Moore, former EJSP Associate Administrator Walter Wise,

---

[1]  On June 7, 2004, this court entered an Order dismissing a fourth plaintiff, Todd
Fletcher, from this litigation for his failure to notify the court of his current address.  Also, on
August 20, 2004, this court entered an Order dismissing Plaintiff Griggs's complaint against
Defendant Flynt for his failure to answer discovery.

2

Assistant Superintendent T.M. Power, Captain Frank Pascucci, Sgt. Morris, SCO Fellman, Disciplinary Hearing Officer Lance Meehan (the "State Defendants"), Correctional Medical Services Administrator David Flynt[2] and 10 John Does.      As will be described below a number of Plaintiffs' claims have been dismissed.  Five prison conditions claims remain.  They concern: 1) overcrowding and sanitation; 2) poor ventilation, heat, and air conditioning; 3) inadequate recreation; 4) violations concerning religious practice, diet, and food; and 5) inadequate medical attention and medical screening of inmates.

The State Defendants move for summary judgment raising defenses of absence of personal involvement, failure to allege personal injury, and an absence of evidence demonstrating constitutional violations.  The State Defendants have also moved to stay proceedings on the claim alleging interference with their mail because a similar issue is pending before the Court of Appeals, Ronald Jones v. M. Brown, et al., Civil No. 03-3823 and Jarmaal W. Allah, et al., v. Governor of New Jersey, Civil Action No. 04-4426.

## *I. PROCEDURAL HISTORY*

Plaintiffs' Complaint was filed on February 21, 2003.  It requested a temporary restraining order and a preliminary injunction.

On September 29, 2003 the court entered an Order dismissing the Plaintiffs' access to courts claim, inadequate grievance procedure claim, and disciplinary due process claim against all defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).  The court further ordered the following claims to proceed against all defendants: conditions of confinement claim;

---

[2]  The complaint against Flynt was dismissed without prejudice on August 20, 2004.

denial of medical care claim; inadequate medical and psychiatric screening claim; denial of religious practice claim; and denial of recreation claim.

Additionally, this court ordered the state Defendants to file affidavits addressing the allegations of Plaintiffs' Complaint regarding sanitation, ventilation, food, and medical care and a brief addressing whether a temporary restraining order or preliminary injunction should be issued to remedy the alleged conditions in the ACSU.  The State Defendants filed their affidavits, a response to Plaintiffs' application for a preliminary injunction, and a Notice of Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) for a failure to state a claim.

On April 22, 2004 the court entered an Order denying Plaintiffs' application for a temporary restraining order and preliminary injunction.  Furthermore, the court dismissed all claims for injunctive relief, claims asserted against the State Defendants in their official capacities, claims based on breach of the settlement agreement in *D.M., et al. v. Terhune*, 96-CV-1840, any claims based on equal protection guarantees, claims of denial of access to courts and procedural due process, and claims based on violations of statutes and regulations of the Department of Corrections.  However, the free speech claim seeking injunctive relief related to the treatment of inmates' mail survived.

Additionally, the court permitted the claims that were not previously dismissed, including: inadequate conditions; denial of medical care; inadequate medical and psychiatric screening; denial of religious practice; interference with legal mail; and denial of recreation to proceed.  Also, the court allowed Plaintiffs to amend their complaint to provide more detailed allegations with respect to claims dismissed solely on a lack of clarity or information.  Plaintiffs failed to amend their Complaint.

4

Thereafter, on July 29, 2004, the court entered an order granting Defendant Flynt's motion to dismiss Griggs's complaint against him due to Griggs's failure to comply with discovery requests.  On December 7, 2004, the State Defendants filed a Notice of Motion to Dismiss Griggs's Complaint.  Griggs has not filed an opposition.  Magistrate Judge Wigenton entered a Report and Recommendation stating that Griggs's complaint should be dismissed without prejudice, but an Order has yet to be entered.

Defendant Flynt then filed a Notice of Motion to Dismiss Perry's Complaint pursuant to Local Rule 10.1(a).  The State Defendants joined this motion which is pending before the court and Khaliq filed an opposition to this motion.  Furthermore, Flynt filed a Notice of Motion for Summary Judgment.  Khaliq received an extension of time to respond to the motion but has not produced any response.  The complaint against Flynt was dismissed without prejudice on August 20, 2004.

The State Defendants filed this Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 asserting that there are no genuine issues of material fact that could support a claim that the conditions at ESJSP violated constitutional rights.  For the reasons set forth below the State Defendants' motion for summary judgment will be granted.  The motion to stay proceedings pending the Court of Appeals's resolution of the legal mail issue will be granted, and the case will be administratively terminated with the right of any party to move to reopen after the Court of Appeals issues its decision.

## *II. FACTS*

### A. Plaintiffs

#### *1. Abdullah Khaliq*

Plaintiff, Abdullah Khaliq is currently in custody at EJSP serving a term of sixty-five years for five counts of robbery. The EJSP adjudicated Khaliq guilty of eighteen prohibited acts in violation of N.J.A.C. 10A:4-4.1(a). As a result of some of his acts, EJSP assigned him to the ACSU for the period of October 9, 2002 to January 21, 2003. Additionally, six of Khaliq's violations were "asterisk" violations, the most serious type of offenses that can be committed by an inmate.

### 2. Gregory Perry

Plaintiff, Gregory Perry is a former New Jersey State inmate, released on parole on January 18, 2005. Perry served a total term of thirty-five years with a mandatory minimum term of eleven years, eleven months and three days for convictions on two counts of robbery, four counts of aggravated assault, one count of possession of a controlled dangerous substance, and one count of possession of a weapon for an unlawful purpose. The EJSP adjudicated Perry guilty of committing twenty-seven prohibited acts in violation of N.J.A.C. 10A:4-4.1(a). As a result of some of his acts, EJSP assigned Perry to the ACSU from September 17, 2002 through February 2, 2004. Additionally, eighteen of Perry's offenses were "asterisk" offenses.

### 3. Walter Griggs

Plaintiff, Walter Griggs is currently in custody at New Jersey State Prison, Trenton, New Jersey serving a total term of thirty years for murder, aggravated assault, and weapons charges. The EJSP adjudicated Griggs guilty of committing three prohibited acts in violation of N.J.A.C. 10A:4-4.1(a). As a result of some of his acts, EJSP assigned Griggs to the ACSU for the period of November 28, 2000 through October 23, 2002. All of Griggs' acts were "asterisk" violations.

### *III. DISCUSSION*

**A. Summary Judgment Standard**

A motion for summary judgment will be granted if after drawing all inferences in favor of the moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c); *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 631 (3d Cir. 1998)*; Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Davis v. Portline Transportes Maritime Int'l*, 16 F.3d 532, 536 n. 3 (3d Cir. 1994); *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue may exist if the record taken as a whole could lead a rational trier of fact to find for the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under Fed. R. Civ. P. 56(c), the moving party bears the burden of pointing out to the district court an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court will take the nonmoving party's allegations of fact as true. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). If the moving party meets its burden, the opposition bears the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B. Liability of State Defendants for Violations of Civil Rights**

7

Section 1983 of U.S.C. Title 42 provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

42 U.S.C. § 1983. In order to state a claim for relief, "a civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant." *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970). "This court has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff." *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981).

Furthermore, "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Downs v. Dept. of Public Welfare*, 368 F.Supp. 454, 463 (E.D. Penn. 1973) (holding that "personal involvement is a necessary element of a § 1983 action and that a superior official is not held liable for the acts of his subordinates merely on the basis of the relationship"). A defendant's "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence"; however, "allegations of participation or actual knowledge and acquiescence... must be made with appropriate particularity." *Id*.

In *Brown v. Sielaff*, 474 F.2d 826, 827 (3d Cir. 1973), a state prisoner filed a complaint

8

seeking injunctive relief and money damages against the Commissioner of Correction and the prison Warden for attempting to conceal prison abuses.  The only allegation that directly implicated the defendants was the "vague accusation" that the defendant attempted to conceal abuse by his prison guards.  *Id.*  The Third Circuit Court of Appeals held that "this allegation is not sufficiently precise to constitute an allegation of a constitutional deprivation sustained by the appellant at the hands of the named defendant."  *Id*.  The appellant did not allege that the defendant "participated directly or indirectly in the circumstances constituting [his] claim"; thus, no claim existed for which relief may be granted.  *Id*.

Additionally, in *Rode*, 845 F.2d at 1208, the Court of Appeals precluded an employee's § 1983 claim against the Pennsylvania Governor because the appellant failed to allege the Governor's "knowledge and acquiescence with the required particularity."  The Plaintiffs' assertion that the Governor had "responsibility for supervising" the other defendants was irrelevant and the appellant "failed to show that the Governor had the necessary personal knowledge to sustain the civil rights actions as to him."  *Id*. at 1208.  Furthermore, the court did not accept the defendant's filing of grievances and phone calls to the Governor's office as adequate support that the Governor had necessary personal knowledge.

Likewise, in *Hyson v. Correctional Medical Services*, 2004 WL 769362, at *2 (D. Del. Apr. 5, 2004), the court held that the defendant could not be held liable under the theory of respondeat superiror because the plaintiff "offered insufficient evidence to show that [the defendant] had personal involvement" in the alleged wrongs.  The plaintiff's complaint only mentioned interactions with the defendant's staff and did not state that he engaged in any communication with the defendant's officials.  *Id*.  Thus, the court granted the defendant's

motion for summary judgment.

### 1. Former Governor James McGreevey

Plaintiffs do not make reference to former Governor McGreevey in the body of the complaint and do not state any specific conduct by the former Governor that violated the plaintiffs' constitutional rights.  Khaliq sent a letter to Governor McGreevey's office describing the conditions of ACSU, but similar to *Rode*, Khaliq's correspondence did not prove that Governor McGreevey had actual knowledge or directly participated in the circumstances surrounding the Complaint.  Aff. Rudow, Ex. A. Depo. Khaliq at 26:3-25.  Additionally, there is no evidence in the record that McGreevey participated in the circumstances surrounding Perry's allegations.  Because "liability cannot be predicated solely on the operation of *respondeat superior"* and Plaintiffs do not provide evidence that Governor McGreevey participated in or had personal knowledge of the alleged offenses, no reasonable jury could find in favor of Plaintiffs against Defendant McGreevey.  Accordingly, Defendant McGreevey's motion for summary judgment is granted against all Plaintiffs.  *Rode*, 845 at 1207.

### 2. Commissioner Devon Brown

Plaintiffs do not reference Commissioner Devon Brown in the body of the complaint and do not state any specific conduct by Commissioner Brown that violated the plaintiffs' constitutional rights.  Khaliq sued Commissioner Brown simply because "he's the commissioner" and "he's responsible for the ad. seg., he responsible for what goes on over there."  Aff. Rudow, Ex. A. Depo. Khaliq at 55:22-56:6.  Additionally, the *Rode* decision is

applicable to Commissioner Brown because Plaintiffs failed to demonstrate that Brown had actual knowledge or directly participated in the circumstances surrounding the Complaint. Plaintiffs do not establish that Commissioner Brown had personal knowledge of their letters and Perry stated that he received a response from Terrence Moore.

Furthermore, Perry admitted that "it's fair to say" that Devon Brown did not injure him, specifically in regards to Perry's double celling.  Aff. Rudow, Ex. B. Depo. Perry at 80:3-7. Also, Perry stated that he has not provided evidence that the conditions of the ACSU reflect Devon Brown's malice toward the Plaintiff.    Aff. Rudow, Ex. B. Depo. Perry at 90:8-22. "Liability cannot be predicated solely on the operation of *respondeat superior*" and the Plaintiffs do not provide evidence that Commissioner Brown participated in or had personal knowledge of the alleged offenses; thus, no reasonable jury could find for Plaintiffs against Defendant Brown. *Rode*, 845 at 1207.   Accordingly, Defendant Brown's motion for summary judgment is granted against all Plaintiffs.

### 3. Assistant Commissioner Robert Balicki

Plaintiffs do not mention Assistant Commissioner Robert Balicki in the body of the complaint and do not state any specific conduct by Assistant Commissioner Balicki that violated the plaintiffs' constitutional rights.  Khaliq stated that he sued Balicki for the same reasons that he sued Commissioner Brown- because he is responsible for "ad. seg."  Aff. Rudow, Ex. A. Depo. Khaliq at 56:4-57-2.  Like *Hyson*, 2004 WL 769362, at *2, Khaliq did not communicate with Balicki.  *Id*. at 59:8-18.  Also, Perry stated that Balicki did not injure him as a result of double celling.  Aff. Rudow, Ex. B. Depo. Perry at 80:3-12.  Thus, Plaintiffs' vague complaint

11

does not provide sufficient allegations that the specific defendant, Robert Balicki, deprived them of their constitutional rights.

Plaintiffs do not allege that Balicki participated directly in the circumstances surrounding his claim and cannot provide evidence that he had personal knowledge of the allegations. Defendant Balicki's liability cannot be predicated solely on vicarious liability and Plaintiffs failed to identify specific conduct by Balicki denying plaintiffs their constitutional rights. Thus, a reasonable jury could not find that Balicki had knowledge or personal involvement with the Plaintiffs' alleged wrongs. Accordingly, Defendant Balicki's motion for summary judgment is granted against all Plaintiffs.

### 4. Hearing Officer Lance Meehan

Plaintiffs' complaint does not contain any specific allegations against Hearing Officer Lance Meehan. Plaintiffs do not provide evidence of specific conduct by Defendant Meehan depriving them of their constitutional rights. Additionally, there is no evidence that Hearing Officer Meehan had personal involvement with the alleged wrongs. Moreover, this court dismissed all claims alleging denial of procedural due process. Therefore, no reasonable jury could find for Plaintiffs against Defendant Meehan. Accordingly, Defendant Meehan's motion for summary judgment is granted against all Plaintiffs.

### 5. Former Associate Administrator Walter Wise

Perry does not make specific references to Former Associate Administrator Walter Wise in the body of the complaint. Furthermore, Perry stated that he did not personally speak with Defendant Wise and that he could not recall whether Defendant Wise received letters pertaining

12

to his alleged constitutional violations.  Aff. Rudow, Ex. B. Depo. Perry at 81:8-16.  Thus, no reasonable jury could find that Walter Wise had personal knowledge or direct involvement with Perry's alleged constitutional wrongs.  Accordingly, Defendant Wise's motion for summary judgment is granted against Plaintiff Perry.

### 6. Assistant Superintendent T.M. Power

Khaliq does not make references to Assistant Superintendent T.M. Power in the body of the complaint and does not state any specific conduct by Defendant Power that violated his constitutional rights.  Additionally, Khaliq's Deposition demonstrated that Khaliq sued Defendant Power because he "had responsibility of ad. seg. and that he could not recall whether he wrote to Defendant Power."  Aff. Rudow, Ex. A. Depo. Khaliq at 57:24-58:1.  Thus, a reasonable jury could not find in favor of Khaliq because there is no evidence in the record that Defendant Power had personal knowledge or direct involvement with Khaliq's alleged wrongs.  As a result, Defendant Power's motion for summary judgment is granted against Plaintiff Khaliq.

### 7. Captain Frank Pascucci

There are no specific allegations against Captain Frank Pascucci in the body of the complaint.  Furthermore, Khaliq did not demonstrate that Defendant Pascucci had personal knowledge or direct involvement with the alleged wrongs.  Khaliq stated that he did not recall whether he wrote to Defendant Pascucci.  Aff. Rudow, Ex. A. Depo. Khaliq at 60:7-8.  Thus, a reasonable jury could not find that Defendant Pascucci had personal knowledge or direct involvement with Khaliq's alleged wrongs.  Accordingly, Defendant Pascucci's motion for summary judgment is granted against Khaliq.

*8. Sergeant Morris*

There are no specific allegations against Sergeant Morris in the body of the complaint. Furthermore, Khaliq stated that his claim against Defendant Morris pertained to Morris's failure to manage to ad. seg.  Aff. Rudow, Ex. A. Depo. Khaliq at 58:11-14.  Also,  Khaliq recalls speaking with Defendant Morris but does not remember the contents of their conversation.  Aff. Rudow, Ex. A. Depo. Khaliq at 60:21-61-2.

Additionally, Perry stated that he did not know Defendant Morris and that he did not have any allegations against Defendant Morris.  Aff. Rudow, Ex. B. Depo. Perry at 82:16-83:1. Similar to *Rode*, the Plaintiffs did not provide evidence that Defendant Morris had personal knowledge or direct involvement with Plaintiffs' alleged violations.  Therefore, no reasonable jury could find in favor of the plaintiffs and Defendant Morris's motion for summary judgment is granted against all plaintiffs.

*9. Sergeant Fellman*

Plaintiffs do not reference Sergeant Fellman in the body of the complaint.  Khaliq did not provide evidence that Defendant Fellman had personal knowledge or direct involvement with the alleged wrongs.  Khaliq stated that he had a conversation with Defendant Fellman but did not recall the nature of their conversation.  Aff. Rudow, Ex. A. Depo. Khaliq at 61:3-62:5.  In fact, Plaintiff Khaliq acknowledged that his conversations with Defendant Fellman "possibly" concerned the weather.  *Id*. at 62:4-5.  Furthermore, Khaliq admitted that Defendant Fellman "didn't do nothing to [him] per se."  *Id*. at 58:8-9.  Therefore, there is no evidence in the record that Defendant Fellman had personal knowledge or direct involvement with Khaliq's alleged

wrongs.  As a result, no reasonable jury could find in favor of Khaliq and Defendant Fellman's motion for summary judgment is granted against Khaliq.

  *10.  Former Administrator Moore*

  Khaliq stated that he sued former administrator Terrence Moore simply because he was an administrator of EJSP.  Aff. Rudow, Ex. A. Depo. Khaliq at 57:3-68:1.  Perry admitted that Moore did not injure him by reason of his period of double celling.  Aff. Rudow, Ex. A. Depo. Perry 80:16-81:7.  As a result, no reasonable jury could find in favor of Khaliq and Perry and Defendant Moore's motion for summary judgment is granted against Khaliq and Perry.

  The validity of Plaintiffs' remaining claims is addressed below.

**C. Conditions of Confinement and Plaintiffs' Eighth Amendment Rights**

  Plaintiffs allege that the ACSU has subjected them to cruel and unusual punishment, violating the Eighth Amendment.  Specifically, Plaintiffs claim the following: inadequate conditions of confinement; denial of medical care; inadequate medical and psychiatric screening; denial of religious practice; and denial of recreation.

  Inmates are placed in ACSU as a result of serious disciplinary infractions and a finding of guilt at a disciplinary hearing.  Aff. Johnson at Ex. D, p. 3.  The purpose of the ACSU is to ensure that inmates assigned to the ACSU receive the necessary care, discipline, training, and treatment needed to prepare them for reintegration into the institution's general population.  *Id*.

  The ACSU Administrative Handbook promulgates the rights and responsibilities of ACSU inmates.  The Handbook notes that inmates serving time in ACSU are responsible for maintaining the sanitation of the housing units.  *Id*.  Also, ACSU inmates shall be served the

normal correction facility meal. *Id*. In the event that an inmate cannot eat the food served due to religious beliefs or medical reasons, he or she may request a religious vegetarian diet or a medical special diet, respectively. *Id*. All requests for changes in diet must be approved by the Medical Department Supervisor. *Id*. The A.C.S.U Administrative Handbook also allows inmates sufficient time for daily grooming, including shaving and showering. *Id*. Furthermore, ACSU inmates are permitted access to medical and dental services. *Id*.

Additionally, ACSU inmates are entitled to recreation privileges, consisting of at least five hours per week outside the cell, unless security, safety or weather conditions dictate otherwise. *Id*. One hour of the required five hours per week of recreation shall be out-of-doors, unless out-of-door recreation will jeopardize prison security or its orderly operation. *Id*. Inmates on "loss of privilege" status may not participate in recreational activity. *Id*.

"The Constitution 'does not mandate comfortable prisons', but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). In order "to establish an Eighth Amendment violation an inmate must allege both an objective element– that the deprivation was sufficiently serious–and a subjective element–that a prison official acted with a sufficiently culpable state of mind." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1997) (citing *Seiter*, 501 U.S. 291).

Only "those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to satisfy the objective element of an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981)). "Conditions of confinement constitute...cruel and unusual punishment 'only when they have a

16

mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (quoting *Wilson*, 501 U.S. at 304).  Furthermore, humane conditions of confinement include adequate food, shelter, medical care, and reasonable measures to guarantee the safety of the inmates.  *Farmer*, 511 U.S. at 832; *Wilson* 501 U.S. at 304.

In *Whitnack*, 16 F.3d at 957, plaintiffs claimed that the condition of their cell, including dried feces on the toilet, hair and vomit in the sink, garbage and rotting food covering the floor, and mucus on the walls violated their constitutional rights; however, Plaintiffs received cleaning supplies within twenty-four hours.  The court held that the record "failed to show that the conditions were of any proven adverse consequence to the health or other basic human needs of the plaintiff"; therefore, the plaintiffs failed to establish the objective element of their Eighth Amendment claim.  *Id*.

In order to satisfy the subjective element of an Eighth Amendment claim, a plaintiff must demonstrate that the defendants acted in a wanton manner.  *Wilson*, 501 U.S. at 302. Furthermore,  "it is appropriate to apply the 'deliberate indifference' standard" to claims characterizing the plaintiff's treatment as "inhumane conditions of confinement, failure to attend to his [or her] medical needs, or a combination of both."  *Wilson*, 501 U.S. at 303 (quoting *LaFaut v. Smith*, 389, 391-92 (4th Cir. 1987)).

*1. Overcrowding and Sanitation*

When evaluating Eighth Amendment claims based on confinement, courts "consider the totality of the circumstances relevant to any alleged constitutional deficiency in shelter."  *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 1000 (3d Cir. 1983).  Overcrowding, specifically

17

double celling, does not violate the Eighth Amendment per se, unless it results in "deprivations of essential food, medical care, or sanitation." *Rhodes*, 452 U.S. at 348. In *Rhodes*, 452 U.S. at 348, the Supreme Court held that housing two prisoners in a cell designed for one individual did not violate the plaintiffs' Eighth Amendment rights because plaintiffs were not deprived of food, medicine, or sanitation, "nor did it create other conditions intolerable for prison confinement."

Additionally, in *Loe v. Wilkinson*, 604 F.Supp. 130, 135 (D. Penn. 1984), due to a large volume of prisoners confined in his unit, plaintiff was required to share his cell with another inmate. The *Loe* Plaintiff complained that double celling was cruel and unusual punishment, violative of the Eighth Amendment. *Id*. The court dismissed the plaintiff's claim because the double celling did not lead to deprivations of medical care, food, sanitation, or increased violence. *Id*.

In the present case, Plaintiffs do not offer evidence that they suffered any injuries as a result of double celling or inadequate sanitation. Khaliq stated that "[he] never said that it was improper to double cell." Aff. Rudow, Ex. A. Depo. Khaliq at 71:7-8. Furthermore, Khaliq's complaint that double celling is unconstitutional is "based upon a standard which the Federal Government and the state gives guidelines for a cell"; however, reliance on minimum space requirements and correctional standards is misplaced. Aff. Rudow, Ex. A. Depo. Khaliq at 71:21-25; *Bell v. Wolfish*, 441 U.S. 520, 543 f.27 (1979). Instead, the court evaluates the totality of the circumstances. Similar to the *Rhodes* and *Loe* cases, Plaintiff does not provide evidence in the record indicating that Plaintiffs were denied essential food, medical care, or appropriate sanitation. Also, Perry noted that he did not suffer injuries as a result of double celling and there is no evidence that he was deprived of essential care. Aff. Rudow, Ex. B. Depo. Perry at 79:17.

In addition, the record indicates that the prison has addressed Khaliq's concerns about his sink and shower.  Aff. Johnson, Ex. B.[3]  Also, Khaliq admitted that he did not sustain injuries from the dirty shower or clogged sink.  Aff. Rudow, Ex. A. Depo. Khaliq at 73:22- 77:14. Furthermore, Perry stated his sink was never broken and a plumber repaired his clogged toilet. Aff. Rudow, Ex. B. Depo. Perry at 84:1-11.  Because the Plaintiffs do not offer evidence of constitutional deficiencies in their shelter, no reasonable jury can decide in favor of the Plaintiffs.

### 2. Ventilation, Heat, and Air Conditioning

In *Hoover v. Watson*, 886 F.Supp. 410, 416-17 (D. Del. 1995), the court described ventilation and odor problems, among other things, as "amorphous conditions" which "did not indicate the deprivation of a particular human need."  Additionally, in order for inadequate heating to rise to the level of a constitutional violation, the alleged offense must be "sufficiently serious."  *Nami* 82 F.3d at 67.  For example, in *Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991), the court found that "defendants' conduct in leaving [Plaintiffs] exposed to temperatures below freezing for four days without affording them any protection beyond that usually provided when the heating system functioned properly, constituted deliberate indifference to their eighth amendment rights."

In the present case, there is no evidence that Perry is complaining of the conditions created by inadequate ventilation, heating, and air.  Furthermore, Khaliq's claims are unsubstantiated and he merely provides that the ventilation system "blows cold air" and "blows

---

[3] Inmate request forms and administrative remedy forms are not numbered as individual exhibits in the Affidavit of Steven M. Johnson; thus, this opinion refers to the forms as listed in the affidavit.

out dirt." Aff. Rudow, Ex. A. Depo. Khaliq at 74:1-25.  Also, the most descriptive complaint

alleged by Khaliq is that "it could be cold outdoors and cold inside." *Id*. at 74:8-9.  In addition,

Khaliq stated that he did not sustain injuries as a result of the ventilation, but speculated that he

might have sustained long term injuries, such as tuberculosis, although he admits that "[he's] not

a physician." *Id*. at 75:1-14.  The conditions in the present case are so far less egregious than that

of *Henderson* that no reasonable jury could determine that there is enough evidence to satisfy the

objective element of an Eighth Amendment violation.

     Moreover, Edward Kocserha, an engineer at EJSP, described the numerous steps taken by

EJSP to repair and maintain the heating and air conditioning system in ACSU  Aff. Edward

Kocserha ("Aff. Kocserha") at ¶ 2.  In his affidavit, Kocsehra stated that EJSP "buildings are

consistently warmer in all inmate cell spaces and staff work areas and cooler in the summer

months." *Id*. at ¶ 7.  Furthermore, attached to Kocserha's affidavit are numerous exhibits

documenting the continuous improvement and maintenance of EJSP.  Aff. Kocserha at Ex. A.

Therefore, the record does not contain evidence that would allow a reasonable jury to rule in

favor of the Plaintiff.  Accordingly, the State Defendants' motion for summary judgment is

granted on Plaintiffs' ventilation, heating, and air complaints.

    *3. Religious Practice, Diet, and Food*

    "The Eighth Amendment requires only that prisoners receive food that is adequate to

maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444,

1456 (9th Cir. 1993).  "The fact that food...sometimes is served cold, while unpleasant, does not

amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th

Cir. 1985).  In this case, Perry complained that his meals were "bland, they were so the

same...that [he] had basically lost [his] appetite for a lot of the items."  Aff. Rudow, Ex. B. Depo.

Perry at 33:8-34:10.  Also, Perry filed an Administrative Remedy Form complaining that food is

served cold.  Aff. Johnson, Ex. B.  The response to Perry's problem indicated that ACSU "is

addressing the problem."  Aff. Johnson, Ex. B.

Additionally, Khaliq filed Administrative Remedy Forms complaining that the food is

cold and sometimes coffee is not served; however, Khaliq never refused a meal.  Aff. Johnson,

Ex. B; Aff. Rudow, Ex. A. Depo. Khaliq at 62:10.  Furthermore, the record indicates that the

ACSU resolved the problems complained of by Khaliq in his Inamte Request Forms and

Requests For Administrative Review.  Aff. Johnson, Ex. A.   As stated in *LeMaire v. Maass*, 12

F.3d at 1456, Plaintiffs' distaste for the food served at A.C.S.U is not evidence of a constitutional

violation.  Therefore, no reasonable jury can decide in favor of the Plaintiffs.

Also, Perry indicated that the denial of religious counseling claim does not pertain to him

and that he was not on a religious diet in ACSU  Aff. Rudow, Ex. B. Depo. Perry at 90:5-6.

Khaliq stated that he could not see an Iman; however, ACSU provided Khaliq with a copy of the

Koran and allowed Khaliq to perform obligatory prayers five times daily.  Aff. Rudow, Ex. A.

Depo. Khaliq at 67:20-68-6.  Thus, there is no evidence in the record that would allow a

reasonable jury to conclude that the State Defendants denied Plaintiffs of their right to practice

religion.

*4. Recreation*

Khaliq and Perry stated that claims regarding the denial of recreation do not pertain to

them.  When asked whether the alleged denial of recreation pertained to him, Khaliq replied,

"No, it don't."  Aff. Rudow, Ex. A. Depo. Khaliq at 84:17-20.  Perry stated that he was not

denied recreation time and that the recreation claim did not pertain to him. Thus, there is no

evidence in the record that would allow a reasonable jury to conclude that Plaintiffs' were denied

recreation.  Aff. Rudow, Ex. B. Depo. Perry at 89:27-90:4.  Accordingly, the State Defendants'

motion for summary judgment is granted on Plaintiffs' denial of recreation claim.

   *5. Medical Claims and Medical Screening of Inmates*

   Prison systems have a duty to provide prisoners with adequate medical care, *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976), and "[t]he Eighth Amendment proscribes deliberate

indifference to prisoners' serious medical needs." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.

2004)*; Natale v. Camden County Corr. Facility*, 318 F.3d at 582.  To determine that Plaintiffs'

Eighth Amendment claims survive a motion for summary judgment, this Court must find that a

reasonable jury could hold that: (1) Plaintiffs' medical problems were serious, and (2) the State

Defendants were deliberately indifferent to those medical problems. "In evaluating a claim for

deliberate indifference to an inmates medical needs, a court should consider the severity of the

inmate's medical problems, and the potential for harm if the medical care is denied or delayed.

A court may also consider the actual harm that resulted from the defendant's alleged indifference

to the plaintiff's serious medical needs." *Jackson v. Fauver*, 334 F.Supp.2d 697, 713 (D.N.J.

2004).  Furthermore, in *Jackson*, "this court has found that a failure to monitor an inmate's

hypertension for a period of three years, even if an indication of negligence or medical

malpractice, is not sufficient to establish an Eighth Amendment claim." *Khaliq v. Brown*, 2005

WL1229792, at *9.

22

In the present case, considering the actual harm that resulted from the alleged indifference, a reasonable jury could not conclude that the A.C.S.U's  actions (or inactions) violated Plaintiffs' Eighth Amendments rights to medical care.  Plaintiff Khaliq stated that "I haven't suffered no injuries as a result of my failure to get...medication or failure to get that- I haven't suffered none, not that I can recall."  Aff. Rudow, Ex. A. Depo. Khaliq at 53:18-21.  Additionally, the record indicates that "there was no expired medication order found in [Khaliq's] medical chart regarding hypertension medications."  Aff. Johnson, Ex. B.  Thus, the record contains no evidence that Khaliq suffered harm as a result of the alleged wrongs by the State Defendants.

Furthermore, the record lacks evidence of any specific harms sustained by Perry as a result of the alleged failure to screen inmates prior to placement in ACSU or resulting from a denial of medical care.  It is "a great unknown" if Perry is injured and he does not specify any injuries he sustained as a result of not receiving a psychiatric evaluation.  Aff. Rudow, Ex. B. Depo. Perry at 39:20.  Perry does not have any complaints about the treatment he received on November 21, 2002, resulting from falling down a staircase.  *Id*. at 66:19-67:3.  In addition, Perry's testimony revealed that he had difficulty making the "long climb" to his third floor cell, but Perry further elaborated that he only had to use the stairs very few times a day.  *Id*. at 70:21-25.  Perry does not substantiate any injuries that are due to a lack of medical care.  Thus, no reasonable jury can find that the State Defendants unconstitutionally denied him medical care.  Accordingly, the State Defendants' motion for summary judgment is granted on Plaintiffs' medical care claims.

### *IV. CONCLUSION*

For the reasons set forth above, the State Defendants' motion for summary judgment is granted on all claims relating to prison conditions.  Giving effect to orders entered previously in this case and giving effect to the summary judgment entered pursuant to this opinion there remains only one claim, that is the challenge to the Department of Corrections's mail policy.  The State Defendants have moved for a stay of this action pending a decision of the Court of Appeals in two appeals in which the same issue is raised.  That motion will be granted and the action will be administratively terminated until the Court of Appeals renders its decision or until a party establishes good cause for restoring the action to the active calendar.  The court will file an order implementing this opinion.


    /s/  Dickinson R. Debevoise
    Dickinson R. Debevoise, U.S.S.D.J.


Dated: September 29, 2005